**STATE ex rel. OKLAHOMA TAX COMMISSION v. WESTHEIMER & DAUBE.**

No. 27817.    March 15, 1938.

C. D. Cund, A. L. Herr, and W. B. Barnes, for plaintiff in error.

Roddie & Beckett, for defendants in error.

GIBSON, J.  This action was brought by Westheimer & Daube, a copartnership, to cancel a tax warrant, directed by the Oklahoma Tax Commission to the sheriff of Carter county, commanding him to levy upon and sell property of the partnership for the purpose of collecting gross production taxes alleged due the state.

Max Westheimer, one of the partners, having died since the appeal was lodged here, the cause is revived as to him in the name of the surviving partners, in accordance with the stipulation of the parties filed herein.

The partners owned an oil and gas lease obtained from the guardian of Lindsy Cann, a full-blood Choctaw Indian, an heir to a portion of the homestead allotment of Stephen Wilson, a full-blood Choctaw Indian. By partition proceedings Lindsy Cann became a half owner of the land so leased and became sole owner thereof by purchase from her cotenant. The lease was duly approved by the county court and by the Secretary of the Interior. Lindsy Cann, thereafter and before production, sold half of her interest to third parties.

Production was begun in August, 1920,

and has continued ever since. From date of production until April, 1923 (March 31), the lessees paid gross production tax on their entire seven-eighths of all the oil and gas produced. Thereafter the lessees declined to pay one-half of the gross production tax which had accrued, claiming that it was exempt because one-half of the land was owned by a full-blood Indian and the lease from her as to this half was what is known as a departmental lease. Furthermore, the lessees, in the fall of 1925, asserting that for the period of time they had paid gross production tax on the entire seven-eighths interest they had paid too much by one-half, took credit for the overpayments and sent the State Auditor a remittance only for the difference between this alleged overpayment and the amount admittedly due on a half interest.

The tax warrant under consideration here is for taxes allegedly unpaid prior to the fall of 1926, and therefore covered the times during which reports were made as hereinabove set forth. It was issued in 1935. By cross-petition the Tax Commission asserts that the voluntary overpayments made by the lessees, if they were such overpayments, could not be used as offsets against subsequent accruing taxes, and that the state is entitled to gross production taxes admittedly not paid on receipts from the half interest claimed to be restricted, as well as taxes for the periods to which the offset payment was applied by the lessees.

The trial court held for the taxpayer.

Here are presented the following questions:

(1) Was the production from the Lindsy Cann lease, during the period of time involved in this action, subject to the payment of a gross production tax to the state of Oklahoma?

(2) Were the defendants in error in this case entitled to offset an admittedly due gross production tax to the state with an alleged erroneous or overpayment of gross production taxes for some prior period?

(3) Was the action of the State Auditor, as reflected by the record in this case, such as might preclude the Oklahoma Tax Commission making an assessment of gross production taxes against the defendants in error?

Under the third proposition are presented facts which, under the authorities pertinent thereto, make it unnecessary to consider the first proposition. We reach the conclusion

that the action of the State Auditor on the question squarely presented to him as to the nontaxability of the one-half production from the so-called restricted land was within his jurisdiction and was of such a definite character as to preclude reopening the question at this date. We also reach the conclusion that the auditor's action on the claimed offset was not in favor of the taxpayers, but was against their claim, so that this question is also to be decided without reference either to the alleged restricted nature of the land or the authority of the auditor to allow such an offset.

Many of the facts upon which the taxpayers rely are agreed to, and few are disputed. Reports were regularly made to the State Auditor on forms prescribed by him. The taxpayers voluntarily paid gross production tax on the entire seven-eighths of the oil produced from the beginning of production to and including the first quarter of 1923, amounting to $24,786.80. For the second quarter of 1923, tax was paid on one-half and exemption claimed on the other (the so-called restricted) half. From that time on until and including the month of August, 1926, reports were regularly made and amount of tax on one-half of the lessees' seven-eighths of the production was shown. Exemption in these subsequent reports was not specifically claimed, but in the appropriate column one-half of the production was listed as nontaxable.

According to the reports for the third and fourth quarters of 1925 the taxpayers owed on the admittedly taxable one-half interest more than one-half of the payments made to and including the first quarter of 1923, so they deducted the sum of $12,393.40 from the amounts due and sent the State Auditor their check for the balance, which he duly turned into the State Treasury. At the time of this payment the taxpayers fully advised the auditor of the amounts of previous payments, amounts admitted due, and how they arrived at the balance remitted. With the transmission of the report for the first quarter of 1923, they sent a letter claiming exemption of the production from tax as being from a restricted lease. Replying to this letter the auditor advised that he was making proper notations on his records and expressed regret that his office was deprived by statute of the privilege of making reimbursement. At that time the auditor was advised by the taxpayers that the Indian Department was still claiming supervision over the lease. In January, 1925, the auditor furnished the partnership

a statement of payments theretofore made, showing "taxes overpaid" by quarters and concluding with the statement: "Refund due $12,393.40."

In 1925 and before taking the offset, the taxpayers filed claim for refund with the Board of Equalization. This was denied. The auditor, when the offset was first claimed, advised the taxpayers that he had no authority to allow it and demanded payment of the taxes admittedly due. But he did accept the check paid as the balance, as hereinabove referred to. The auditor's records show, however, that the taxpayers were then again notified that the claim could not be allowed and that current taxes must be paid without deductions. This is shown by copy of letter duly identified in which the auditor refers to the payment as being a part payment. It is admitted that no further demands for payment were made for a period of nearly ten years. The Indian Department had, as a matter of fact, claimed a supervision over the lease, which it did not relinquish until 1927.

Whether the department, the taxpayer, and the auditor were right or wrong in assuming that the lease was restricted and the production nontaxable, the question was squarely submitted to the auditor and the claim of nontaxability was allowed by him. Under the act then in force, he had jurisdiction to determine this question and the amount due. Section 9814, C. O. S. 1921, gave him the specific authority to ascertain the truthfulness and correctness of the reports and to determine the correct amounts due. There was no deception here and no omission of facts. The claim was made in good faith, duly considered by the auditor, and decision made. Therefore the Tax Commission cannot now recover any taxes on this one-half interest which was during said years claimed as nontaxable. State ex rel. v. Sinclair Prairie Oil Co., 171 Okla. 498, 41 P.2d 876.

But as to the admittedly taxable interest for the period during which the alleged offset was claimed, a different question is presented. Here is the positive and definite finding of the auditor that the offset was not allowable. The position of the taxpayers might have been tenable, if the claim had been made and the auditor had accepted it either by definite ruling or by acts signifying an acquiescence. The record, however, leaves no doubt that he did not allow the offset, but positively held to the contrary. This is shown by his letter of November 7, 1925, which the taxpayers admittedly received, and by his subsequent letter, which they do not admit receiving. Whether or not they received the latter letter, it is apparent from uncontradicted evidence that the letter was prepared and mailed, evidencing the auditor's action thereon. Here it may be said that the testimony of the taxpayers' auditor that they had not received it ordinarily would not be sufficient to overcome the presumption of its receipt by some member of the firm. The members of the firm did not testify.

But the point at issue here is not so much whether that letter was received, but whether the auditor (assuming he had the authority) allowed the offset. The undisputed evidence is that when first claimed he did not allow it, but ruled directly to the contrary. There is no evidence that this ruling was changed except by his action in accepting the money and failing to make demand for several years. We do not believe that the taxpayers can base an estoppel or plea of res adjudicata on such acts. The same evidence upon which they rely for an acceptance of their claim carries with it notification of its disallowance. In this it appears, therefore, that the facts are stronger in favor of the state than those in Wootten v. Oklahoma Tax Commission, 170 Okla. 584, 40 P.2d 672. It follows that the tax in the amount of the alleged offset is still due. Gibson Co. v. Oklahoma Tax Commission, 180 Okla. 53, 68 P.2d 87.

The cause was tried on February 10, 1937. At that time there was in force section 3 of article 2, chapter 66, of the Extra Session of the 16th Legislature (S. L. 1936-1937, p. 57), which remitted all penalties on gross production taxes accrued prior to July 1, 1931, provided that said taxes were paid in full on or before July 1, 1937. It is obvious, therefore, that had the court entered a correct judgment and permitted sale, its judgment would necessarily have canceled all penalties and interest accrued by allowing payment without penalty within the statutory time, or by providing that if sale by sheriff were made within the said time, such sale would not be for such penalties, interest, or costs. To the extent that the warrant called for more than $12,393.40 it was necessarily at that time unenforceable, and to that extent the judgment may be said to have been correct.

The cause was begun as a proceeding in equity, and since it is an equity case, this court should render or cause to be rendered such judgment as the lower court

should have rendered. Since the date for payment of the tax has expired, however, it is obvious that the court cannot provide for the payment of the tax before the date fixed by the act.

Without discussing at length the question of whether such remission of penalties gave the taxpayers certain vested rights which were not taken away by appeal, or whether the law in force at the date of the trial governs in a case of this kind, we believe that justice will be done by adjudging and decreeing that the warrant is valid only for the sum of $12,393.40, and penalties on that sum, providing that said warrant shall be completely discharged and the taxpayers released from further liability if such principal sum without penalty is paid within four months from the date of the filing of the mandate herein, and if not paid within said time execution may issue for said sum, with penalties, interest, and costs.

It is so ordered.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH, PHELPS. CORN, HURST, and DAVISON, JJ., concur. RILEY, J., absent.